UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LAM HUYNH,<br><br>Petitioner,<br><br>v.<br><br>BRIAN ENGLISH,<br><br>Respondent. | CAUSE NO. 3:26cv410 DRL-SJF |

OPINION AND ORDER

Immigration detainee Lam Huynh filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition. Mr. Huynh has not filed a reply, but the time to do so has expired, and he has not sought an extension. The petition is ready to be decided.

Mr. Huynh entered the United States in 1979 as a refugee from Vietnam. In 1993, he was convicted of robbery. On November 11, 1994, an immigration judge ordered him removed. He transferred into immigration custody in 1997; but, on June 7, 2001, he was released on an order of supervision when there was no significant likelihood of removal. In September 2023, Mr. Huynh attempted to obtain travel documents from Vietnam to pursue a personal business opportunity, but the Vietnamese embassy repeatedly rejected his requests. On March 19, 2026, United States Immigration and Customs Enforcement (ICE) detained him again. He is currently held at the Miami Correctional Facility.

Back in April, the respondent represented that the government intends to remove Mr. Huynh to Vietnam but that it was unlikely that he would be removed within the next 30 days. The respondent also filed an affidavit in which an ICE official attests that ICE is working to acquire a travel document from Vietnam.

The respondent first argues that the court lacks subject matter jurisdiction over Mr. Huynh's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Huynh ended 29 years ago. *See* 8 U.S.C. §§ 231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6). Given his criminal conviction,

Mr. Huynh's detention years ago was authorized by § 1231(a)(6). The Warden likewise relies on this same statute as the basis for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure

removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667

F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026).[1]

Mr. Huynh's immediate period of detention spans six months. The court thus turns to whether his removal is reasonably foreseeable. To start, the respondent identifies Vietnam as the only country under consideration for removal. In 2001, the government released him on an order of supervision after years of detention based on finding no significant likelihood of removal. His efforts to obtain travel documents from Vietnam in 2023 were also unsuccessful. Additionally, the court is well aware, after numerous habeas petitions in the context of immigration, that repatriation to Vietnam for pre-1995 immigrants faces unique headwinds, notwithstanding a 2020 Memorandum of Understanding between the United States and Vietnam and notwithstanding one case in which the record offered more than it does here today, *see Huynh v. English*, 2026 WL 1074054, 4 (N.D. Ind. Apr. 17, 2026), though even there a second petition has been filed because of ongoing challenges. The court finds

[1] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

that Mr. Huynh met his preliminary burden of showing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

To rebut this showing, the respondent represents that the government intends to remove Mr. Huynh to Vietnam but that the government has not obtained travel documents from Vietnam. This meager showing doesn't demonstrate that Mr. Huynh's removal is likely to occur within the reasonably foreseeable future. It does not explain why efforts to remove Mr. Huynh will be successful now when efforts to obtain travel documents were unsuccessful from 1997-2001 and in 2023 and given Vietnam's history of refusing to repatriate individuals like Mr. Huynh who entered the United States prior to 1995 (based on this record). It also provides no detail as to what measures have been taken to obtain travel documents to date or the process for obtaining such documents going forward. It does not provide any insight as to when Vietnam might reach a decision once a formal request has been submitted or the likelihood that Vietnam will issue travel documents. It does not rest on the status of repatriation negotiations, or even suggest there are any that merit particular deference. Nor has the government updated its showing while this petition pended to suggest that progress has been made. In short, the government has not shown a likelihood of Mr. Huynh's removal in the reasonably foreseeable future. Therefore, the respondent must release Mr. Huynh under *Zadvydas*. Efforts to remove him may continue while he returns to supervision, on the same conditions as his last release.

For these reasons, the court:

(1) GRANTS the petition for writ of habeas corpus [1] and ORDERS the respondent to release Lam Huynh on the same conditions of supervised release that existed before his

re-detention and to certify compliance with this order by filing a notice with the court by **October 7, 2026**; and

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release.

SO ORDERED.

October 5, 2026

*s/ Damon R. Leichty*
Judge, United States District Court